Good morning, Your Honors, and may it please the Court, Neha Jagannathan on behalf of the petitioner Victor Fourstar. I'd like to reserve two minutes for rebuttal, and I'll watch the time. Okay, good. The two issues for this Court are, first, whether the disciplinary hearing officer's decision to exclude the only evidence that Mr. Fourstar sought to present in his defense for the charge of fighting violated his due process rights, and, second, whether the district court should have granted Mr. Fourstar an evidentiary hearing on his claim. Starting with the first issue, there's no question that an inmate who faces the loss of good conduct time has a right to present witnesses in his defense unless it would be unduly hazardous to institutional safety or correctional goals. The DHO never alleged in this case, and nothing in the record suggests, that allowing Mr. Norquay's testimony would have jeopardized safety or correctional goals. Does the hearing officer, I don't know what his formal title is, have the normal power that somebody presiding at a hearing might have, which is to exclude evidence that might be irrelevant or duplicative? I think the hearing officer probably has some discretion in that regard, Your Honor. But in this case, the hearing officer's determination that Mr. Norquay's testimony wasn't relevant was incorrect. Even taking Mr. Fourstar alleged that Mr. Norquay had testimony not just about the second padlock assault when Mr. Hoffman beat Mr. Fourstar with the padlock just a few hours after the first day room incident, but also that he had relevant information about the first incident. Now, where does he say that? I checked your reference. You give me ER 34. That looks like his petition to the court. And he does say that Norquay has evidence with respect to the assault with the sock and the padlock, but he has evidence with respect. That's what he says later when he's coming into federal district court. Is there any evidence in the record prior to that time to this effect? There isn't, Your Honor. We don't have a complete record of the DHO proceedings. All we have is the report that was written weeks after the fact by the DHO officer. But even if Mr. Okay, but I want to stay on that point. So I don't think he can create an evidentiary dispute as to whether or not Norquay had evidence as to the first assault merely by asserting it for the first time in the district court when there's nothing in the record to support it that he's coming into the district court with. So help me out with that if you can. I think he was proceeding pro se in the district court and pro se in the DHO hearing. He we don't have a complete record of the DHO hearing. And I think But we don't even have an affidavit from your client that says, I told the hearing officer that this guy had relevant information about the very assault that I was being tried for, if you will. What he seems to have told the so far, all we can tell is that the hearing officer thought that this witness only had information about another assault. And so under those circumstances, you know, I don't think we'd reverse a district judge for excluding a witness. Why would we grant a habeas writ? Well, I think even if we exclude what Mr. Norquay alleged in the district court, if we just limit the analysis to what was in the DHO report about what Mr. Norquay could have testified to, which is that he could have testified to the second padlock assault, I think even if his testimony would have been limited to that subject, his testimony would still be relevant. And it would be relevant because Mr. Forstar alleged principally as his defense that he acted to defend himself and that Mr. Hoffman hit him first. And so evidence about Mr. Hoffman's later violent assault on Mr. Forstar is relevant to show Mr. Hoffman's violent character and should have been admitted in order to corroborate Mr. Forstar's self-defense claim. But it would also be relevant to Mr. Forstar's, to this level of sanctions to be imposed. Now, we don't have it, but I gather we have a summary of it, but we do not have the actual film or tape of the incident, the description of that. And, of course, the officer, the hearing officer saw the tape, at least I assume he saw the tape. Somebody in the prison official saw the tape, and I think it was the hearing officer as well as anybody else. So they can look at the tape and see who hit who first. I mean, so if the tape says X and your client says Y, I mean, who are we supposed to believe? Well, so the due process violation happened at the moment that Norquay's testimony was excluded. We can't tell from the record whether or not the DHO officer excluded that testimony before or after he viewed the videotape. So he can't justify violating his rights because he later saw the tape. Although it seems to me we have a horse and cart situation here. You say a due process was violated, but if the witness had no relevant information about the first assault or about the assault that he was at being disciplined for, then I'm not sure there was a due process violation. So normally if we were dealing, and I understand it's a prison hearing, if we were dealing with a district court and this were the issue on appeal, we'd say what was your proffer? Did the judge abuse her discretion in light of having seen this film? We're in a habeas here. Does that change the way we normally operate? Well, I think, Your Honor, the DHO officer didn't have enough information to conclude that Mr. Norquay's testimony would have been relevant because they knew that he would have testified about another violent incident between the same two inmates, Mr. Forster and Mr. Hoffman, that happened just a few hours later. And I want to just go back to the video issue for a moment. As Your Honor noted, all we have are the descriptions of the video that are in the report. It doesn't appear there's any audio. We don't know what time the video started or stopped. We don't know the angle of the video. And we don't know if the DHO officer made the wrong determination that it wasn't relevant before or after he saw the video. And Mr. Norquay's testimony would at least have been relevant to the issue of sanctions, even if it wouldn't have provided a complete defense to the charge of fighting with another inmate. The hearing officer, in issuing the sanctions that he did, noted that part of his reasoning was that a fight between inmates can escalate to other instances of violence, and he felt that the 27 days was necessary to deter Mr. Forster from this conduct in the future. But if Mr. Forster was acting solely to defend himself, then a smaller sanction could presumably achieve the same level of deterrence. And the hearing officer also made a finding of fact that Mr. Forster initiated the physical altercation, suggesting that it would have been helpful if Mr. Forster could have presented evidence the contrary. Mr. Forster did present evidence that supported the hearing officer's determination, because according to Mr. Forster, he didn't like what the other guy had done, because he'd gone up and changed the channel, and he thought that was disrespectful. So after the guy, after the victim goes up, changes the channel, then according to the description of the tape, and this one doesn't sound like the angle's going to make much of a difference. So the victim goes up and changes the channel on the TV, goes back and sits down. At that point, Mr. Forster gets up, and then the fight starts. And Forster says, yeah, yeah, I thought it was disrespectful. He changed the channel. So it's clearly Forster, by his own testimony, who's going after him for having done something that he didn't like. I think the portion of the record Your Honor is referring to is the remarks that Mr. Forster is alleged to have made when he received the incident report. But in his administrative appeals, he denies having made that comment. I see. And I see that I have two minutes. Unless there are other questions now, I'll reserve my time. Why don't you save it, and then you'll have a chance to respond. Good morning, Your Honors, and may it please the Court. My name is Timothy Delgado, and I'm an AUSA in Sacramento. Judge Fletcher, I'd like to focus on your question about the, I guess, the scope of the affidavit, because I think that cuts to the core of the appellee's argument here. Mr. Forster submitted a 12-page, single-spaced affidavit. The one mention of Mr. Norquay was contained at ER 34, in which Mr. Forster says that Norquay was indeed a witness to the events in question and as well also a witness to the padlock assault that I suffered. Now, the padlock is not relevant here. I think there's no dispute that Norquay was a witness to that. So the import of that statement and the one that Forster would have the Court sort of extrapolate from that is, is that based on the words, he was indeed a witness to the events in question. So why then shouldn't he be called as a witness at the hearing? Why should an inmate have to make the kind of proffer that we would require of a lawyer in Federal court? He says, there's a witness to this event. I'd like to bring him to the hearing. The hearing officer doesn't say it would be disruptive or that it would interfere with prison discipline. He just says, I don't think you need him. He's not relevant. He witnessed the event. He may not be helpful. That's a separate issue. But why? If he witnessed the event, why isn't he a relevant witness? Well, Your Honor, there is no claim that he witnessed that Mr. Forster or, I'm sorry, Mr. Norquay actually witnessed the event. And the reason ---- Well, no, I think that's exactly what the claim is on ER-34. I think ---- I apologize in the sequencing of this. At the time that the disciplined hearing officer made the relevance determination, the limited information he had before him ----  ----said nothing. Your point is that the hearing officer wasn't told he witnessed the event. That's correct, Your Honor. But now Mr. Forster says he did. And we have a prison disciplinary hearing where a pro se prisoner wants to call a witness and there's not going to be any effect on prison discipline or order from it. And he's a pro se guy. If he has somebody that he wants to call as a witness, does he have to make a strong showing of relevance to bring him in? Yes, Your Honor. And there are a couple of reasons for that. First of all, this Court's holding in Bostic says that, in fact, inmates do have to provide some sort of proffer or precise ---- proffer the precise nature of the anticipated testimony so that prison officials can make a relevance, a necessity determination, or make a determination whether calling that witness would be a threat to security or institutional concerns. In Wolf v. McDonald, Your Honor, the Court's recognized that the same type of rights that would be afforded a defendant in a criminal proceeding aren't afforded a defendant in prison disciplinary proceedings. But we start out here with the notion that there's no real concern about discipline or order in calling this witness. Oh, I would agree with that, Your Honor. Why? Why was there? Well, the pin site in Wolf at page 566 ---- No. I'm talking about this case. But is there any evidence in this case that calling this witness would pose a danger to prison order or discipline? Not necessarily danger, Your Honor, but it would be disruptive in the sense that calling witnesses, an unlimited number or even one witness, taking him out of his cell and programming him, bringing him to a disciplinary proceeding where there's no evidence whatsoever, no suggestion that that witness has relevant or necessary testimony to offer, that would be disruptive to the institutional concerns. I'm not claiming that it would present a danger, per se, but I think it would be disruptive. And again, the threshold is not merely whether there's undue hazards or dangers, but also whether or not that inmate has relevant or necessary testimony to hearing ---- testimony to offer. See, the reason I'm struggling with that a bit is that in Wolf and other places, courts have said, if you're not going to allow a witness to show up, you ought to give the reason. And to be fair, in this case, the hearing officer did. He said, I don't think he has anything relevant to say. But he didn't say it would be disruptive or I have a presumptive view that we shouldn't call people unless they're really highly relevant. He just said, what you told me he's going to say isn't going to be helpful to me. So I'm not sure why we should focus on the disruption issue at all. Well, I'm not focusing on the disruption issue, Your Honor. I think the only ---- if there are various bases for denying an inmate's request for a witness, disruption can be one of them. But I think two other critical ones in this case are relevance and necessity. The hearing officer made a determination that Norquay was not, in fact, relevant, and nothing more is required to deny his request. If I can go at the question this way. When he gets to the district court, he says Norquay was a witness to the first attack. Now, he does not say, and I told the relevant officials in the jail that he was a witness to the first attack. Pro se pleaders in habeas have some ---- will give them some leeway. Should the district court have said, well, you know, you gave us a little piece necessary, but you didn't give us the other half of that piece, which is to say, and I told them that he witnessed the first event. Should we have ---- should the district court have allowed, pointed out the deficiency and said, now, are you telling me not only that Norquay witnessed the first attack, but you also told the hearing officer or the hearing officer otherwise knew that he was a witness? Well, Your Honor, I think that if we're looking at what the district court had before it before him, the district officer merely had this essentially a ten-word statement. It wasn't that Norquay had seen the attack in the day room. It says Norquay was indeed a witness to the events in question. Right. And there's no telling. I know exactly what he wrote. Okay. Yeah. And so, Your Honor, I think on that basis, there's no reason. That doesn't ---- that alone is not sufficient to create a material dispute of fact and question the hearing. But we're dealing with a pro se habeas petitioner who maybe thinks that telling the district court that he was a witness is enough. But, in fact, what he really needs to say is two things. Number one, Norquay was a witness to the first attack. And number two, the hearing officer had reason to know that he was a witness. Now, that second thing is not stated in the affidavit. So the district judge said, now, can you honestly say that the hearing officer knew? Now, should the district court have given him another chance to plead, in other words? No, Your Honor. And the reason being, what we're doing is essentially assessing whether or not the district court or, I'm sorry, the disciplined hearing officer had sufficient information before him at the time. Well, I understand exactly that. And that's exactly what my question goes to. Should the district court have allowed Mr. Forstar to allege or to give an affidavit in the district court that the hearing officer did know? I don't think that that would be required, Your Honor, because the time to, in terms of amending, I don't think there's any question as to what, as these claims evolve over time, what that affidavit might have suggested had Mr. Forstar been allowed to amend or provide a supplemental affidavit. And that's why I think in this Court's review of whether there was a right to call this witness, the only analysis has to be on the information the hearing officer had before him. Even liberal construction is limited in certain respects. And I think in this case, there is nothing that the Court has on this record that would allow the Court to extrapolate from the words, he was a witness to the events in question, that he must have seen the assault in the dayroom or had any sort of relevant evidence about Mr. Hoffman's character for violence. That's not a part of the record, either. That's entirely speculative. I think there are other bases. I would just like to very briefly discuss the video evidence. No, that was not part of the record before the district court, but it need not be under the some evidence standard set out in Superintendent v. Hill. Reviewing courts do not need to conduct an independent assessment of the evidence or weigh credibility. And so the district court had all the evidence that it needed in order to find that there was some evidence to support the finding that procedural and substantive due process had been provided in this case. So if there are no further questions, I'll yield the remainder of my time. Thank you. Thank you. I'd like to just make two points, starting with Your Honor's discussion with counsel. Because Mr. Forstar was proceeding pro se in the district court, I do think benefit of remanding to the district court to provide an evidentiary hearing or a chance for Mr. Forstar to make further factual cases that he could address the issue Your  And I think it's important to note on page 34 that he's alleged Mr. Norquay was a witness to the first day room incident, not just the padlock assault. And a further inquiry could allow the court to address, you know, whether that was conveyed to the hearing officer, given that we have a very limited record of what was presented to the hearing officer. Well, except here's my concern about that. It seems to me as now that he's represented, you would have to have some basis for asking the court to amend to make him let him make that allegation. We just shouldn't send it back and say, well, let's let him make it. And you're representing him. Your brief doesn't seek leave to amend to make that allegation, does it? I think the ---- I mean, you're an honest lawyer. So you didn't come up to us and say, hey, now, if we if we'd had leave to amend, we would have put in the complaint that he told the hearing officer that. But you're not arguing that. And so to me, that suggests because you've done a fine job on this case that you really don't think you can make that allegation. No, you're right. I think I think the argument has been limited to what was presented to the district court and whether the district court ---- But you're not your brief doesn't seek leave to amend, does it? It doesn't. It does not. Have you have you ever spoken to Mr. Forrester in connection with this case? I have. Yeah. OK. Yes. I want to turn to the to one more point. I see my time is running out. But the district hearing officer did have enough information to conclude that Norquay's testimony was relevant, even if it was limited to the second assault. He knew that Norquay was a witness to the second assault, and he knew that Mr. Hoffman alleged that he was hit first. And I see that my time is almost up, unless there are further questions. OK. Thank you. Thank you very much. And before we take this case under submission, I would like to thank and I'm going to have trouble pronouncing your name properly. Jaganathan. Is that how you pronounce it? Thank you. Thank you for doing this. She's doing this pro se that is doing this pro bono that is to say for free under our program here at the court. And we very much appreciate the help that you and others like you do. And thank you for your fine brief and your fine argument. I'll give you the same thanks, but you're getting paid. But thank you very much. It was a very nice argument. OK. Forrest Arbor versus Colton Haver, submitted.
judges: W. Fletcher, Watford, Hurwitz